IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,

Plaintiff,

vs.

SEAN AKINA, (01)

Defendant.

CR. NO. 16-00739 JMS-01

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 261

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 261**

## I. INTRODUCTION

Defendant Sean Akina ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Sheridan, Oregon ("Sheridan"), ECF No. 261. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if he had, the court would deny the motion based on consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, the motion is DENIED.

## II. BACKGROUND

Defendant, currently 31 years old, is serving a sentence at Sheridan with a projected release date of March 12, 2022. *See* https://www.bop.gov/inmateloc/ (last visited October 14, 2020).

On May 30, 2017, Defendant entered pleas of guilty to bank fraud and aggravated identity theft pursuant to a plea agreement. ECF Nos. 150, 151. Defendant was sentenced on October 30, 2017, to a total term of incarceration of five years and a total term of supervised release of five years.[1] ECF Nos. 213, 215. On September 22, 2020, Defendant filed his Motion for Compassionate Release. ECF No. 261. The Government filed its Opposition on October 6, 2020, ECF No. 270, and Defendant filed a Reply on October 9, 2020. ECF No. 274.

The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

## III. DISCUSSION

### A. Legal Standard

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the

[1] The five-year term of incarceration consisted of three years as to count 2 (bank fraud) and two years as to count 13 (aggravated identity theft), with the terms to run consecutive. ECF No. 215.

> term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, the United States appears to agree, based on Defendant's representations, that Defendant has fully exhausted his administrative remedies. *See* ECF No. 270 at PageID # 1660.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline § 1B1.13 provides specific examples of extraordinary and compelling reasons for compassionate release. *See* Guideline § 1B1.13 cmt. n.1(A)-(D). Here, Defendant relies on two of the Guideline provisions. First, Defendant argues that extraordinary and compelling reasons exist because he is suffering from a serious physical or medical condition "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *Id*. at n.1(A)(ii). Second, Defendant relies on the catch-all provision that grants discretion to the BOP Director to determine whether other extraordinary and compelling reasons exist. *Id*. at n.1(D). In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release." *United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020); *see also United States v. Brooker*, __F.3d__, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."). The court incorporates its *Hernandez* analysis here.

**B. Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020 WL 4284128, at *4 (D. Or. July 27, 2020). Here, Defendant raises the following primary arguments in support of his Motion: 1) he suffers from HIV (which compromises his immune system); 2) he has severe allergies, and recently had a seizure;[2] 3) his medical conditions, coupled with the current COVID-19 pandemic, substantially diminishes his ability to provide self-care within Sheridan; 4) he is at great risk should be contract COVID-19 while at Sheridan; and 5) he was convicted of non-violent offenses and has completed various courses while in custody. *See* ECF No. 261-1. The court addresses each argument in turn.

The court agrees that an HIV-positive individual might be an increased risk for severe illness from COVID-19. According to the Centers for Disease Control and Prevention ("CDC")

> Many conditions and treatments can cause a person to be immunocompromised or have a weakened immune system. These include: having a solid organ transplant, blood, or bone marrow transplant; immune deficiencies; *HIV with a low CD4 cell count or not on HIV treatment*;

[2] Defendant suffered a seizure in February 2020, with the medical records reflecting this as "new onset; single event." ECF No. 265 at PageID # 1493. Whether standing alone or in combination with his HIV, Defendant has not shown that having a single seizure qualifies as an extraordinary and compelling reason to justify his release.

> prolonged use of corticosteroids; or use of other immune weakening medicines. Having a weakened immune system may increase your risk of severe illness from COVID-19.

*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#immunocompromised-state (last visited October 14, 2020) (emphasis added); *see also* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited October 14, 2020) (stating that an individual with HIV "might be at an increased risk for severe illness from the virus that causes COVID-19.").

Further, in a "question and answer" asking whether people with HIV are at a higher risk for COVID-19 than other people, the CDC states:

> We are still learning about COVID-19 and how it affects people with HIV. Based on limited data, we believe people with HIV who are on effective HIV treatment have the same risk for COVID-19 as people who do not have HIV.
>
> Older adults and people of any age who have serious underlying medical conditions might be at increased risk for severe illness. This includes people who have weakened immune systems. The risk for people with HIV getting very sick is greatest in
>
> - People with a low CD4 cell count, and

- People not on effective HIV treatment (antiretroviral therapy or ART).

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html (answer to question "Are people with HIV at higher risk for COVID-19 than other people") (last visited October 14, 2020).

Defendant's medical records reflect that although he has HIV, he receives HIV treatment and has CD4 counts within the normal range. On April 30, 2020, Defendant's absolute CD4+ cell count was 697, with a reference range (a normal range of limits) of 490-1740.[3] ECF No. 265 at PageID # 1528. On January 28, 2020, his CD+4 cell count was 653, and on October 29, 2020 the CD+4 cell count was 879. *Id*. at PageID # 1532, 1596.[4] Further, Defendant's claim of an inability to self-care due to his HIV status is not supported by the medical records. Defendant is taking HIV medication (either bictegravir/emtricitabine/tenofovir or biktarvy), and he remains "HIV asymptomatic (never had an HIV-related illness)." *See* ECF No. 265 at Page ID # 1487. In short, Defendant is asymptomatic,

---

[3] Defendant's medical records reflect a reference range of 490-1740; the CDC states that a "healthy adult has between 500 and 1600 CD4 cells." https://www.cdc.gov/hiv/pdf/effective-interventions/treat/steps-to-care/my-stc/cdc-hiv-stc-what-are-cd4-cells.pdf (last visited Oct. 14, 2020).

[4] The court recognizes that Defendant's CD4/CD8 ratio has fallen below the reference range in these same screenings, and that Defendant this ratio is a "reflection of immune system health." *See* ECF No. 261-1 at PageID # 1299; ECF No. 273-2; and ECF No. 274 at PageID # 1700. The CDC, however, does not rely on the CD4/CD8 ratio, but instead focuses solely on the CD4 cell count. Regardless, Defendant has failed to show that his CD4/CD8 ratio places him at any particular risk, let alone the sort of risk that would demonstrate extraordinary and compelling reasons to justify his release.

receives HIV combination therapy, and has CD4 cell counts within normal range. Under the CDC guidance, at most Defendant may be at an increased risk should he contract COVID-19.

Defendant has also failed to show that the hardships he faces at Sheridan differ significantly from any other Bureau of Prisons ("BOP") facility. In fact, the COVID-19 virus is presently contained at Sheridan, with BOP currently reporting no inmate or staff members with confirmed active cases. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited October 14, 2020).[5] And, at 31 years old, Defendant is not in a high risk age group. As stated by the CDC:

> As you get older, your risk for severe illness from COVID-19 increases. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited October 14, 2020).

[5] Sheridan FCI presently houses 1,092 inmates. *See* https://www.bop.gov/locations/institutions/she/ (last visited October 14 2020).

Finally, although Defendant's programming is commendable, it does not constitute a basis to find extraordinary and compelling reasons to justify early release.

In short, Defendant has not demonstrated extraordinary and compelling reasons that warrant compassionate release.

**C. Section 3553(a) Factors**

Even if Defendant had demonstrated that the required extraordinary and compelling reasons exist to justify compassionate release, the court would deny his Motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"[6] and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.

[6] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

§ 3553(a)(1)-(2). And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

Here, Defendant was the leader in a conspiracy that involved creating fraudulent checks and then cashing those checks at various Honolulu businesses, with the offense involving at least 64 separate victims. *See* Presentence Investigation Report ("PSR") ¶¶ 9-39, 59, ECF No. 186 at PageID # 907-921, 925. Given his leadership role in this conspiracy, Defendant received a 4-level upward adjustment under the Guidelines for his role in the offense. *Id*. at ¶ 62, ECF No. 186 at PageID # 926. Defendant also has a serious and lengthy criminal history, with prior convictions for assault 3, promoting a dangerous drug 3, robbery 2 (2 times), and fraudulent use of a credit card. *Id*. at ¶¶ 72-76, ECF No. 186 at PageID # 927-30.

Considering all of the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's programming in custody, and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would undermine the goals of sentencing set forth in § 3553(a)(2).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he had, the court would deny the motion based on the relevant § 3553(a) factors.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 261, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 14, 2020.




/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Akina*, Cr. No. 16-00739 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF No. 261